**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-25202-GAYLES

JOHN DOE, individually and on behalf of all others similarly situated,

*Plaintiff*,

vs.

CURALEAF, INC.,

*Defendant*.

**DEFENDANT CURALEAF, INC.'S MOTION TO DISMISS**
**WITH INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**


INTRODUCTION ..... 1

BACKGROUND ..... 2

A. Curaleaf ..... 2

B. Curaleaf's Florida Online Store ..... 2

C. Plaintiff's Claims ..... 3

ARGUMENT ..... 4

I. PLAINTIFF FAILS TO STATE A FEDERAL WIRETAP ACT CLAIM AGAINST CURALEAF ..... 4

A. Plaintiff Fails to Allege that Curaleaf Intercepted or Procured Another to Intercept the "Contents" of a Communication ..... 5

B. Plaintiff's Wiretap Act Claim Also Fails Because Curaleaf Was a Party to the Allegedly Intercepted Communication and the Crime-Tort Exception Does Not Apply. ..... 7

II. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER THE FLORIDA SECURITY OF COMMUNICATIONS ACT ..... 10

III. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR CIVIL THEFT UNDER FLORIDA LAW. ..... 13

IV. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT. ..... 14

V. PLAINTIFF'S COMPLAINT FAILS TO STATE AN INTRUSION UPON SECLUSION CLAIM AGAINST CURALEAF UNDER FLORIDA LAW ..... 17

CONCLUSION ..... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&E Adventures LLC v. Intercard, Inc.*,
529 F. Supp. 3d 1333 (S.D. Fla. 2021) .......... 16

*Allstate Ins. Co. v. Ginsberg*,
863 So. 2d 156 (Fla. 2003) .......... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Balcor Prop. Mgmt., Inc. v. Ahronovitz*,
634 So. 2d 277 (Fla. Dist. Ct. App. 1994) .......... 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Bradley v. City of St. Cloud*,
No. 6:12-CV-1348-ORL-37, 2013 WL 3270403 (M.D. Fla. June 26, 2013) .......... 18

*Cardoso v. Whirlpool Corp*,
Case No. 21-CV-60784-WPD, 2021 WL 2820822 (S.D. Fla. Jul. 6, 2021) .......... 11

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 5

*Coleman v. CubeSmart*,
328 F. Supp. 3d 1349 (S.D. Fla. 2018) .......... 15

*Connor v. Whirlpool Corp.*,
21-CV-14180-WPD, 2021 WL 3076477 (S.D. Fla. July 6, 2021) .......... 11

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023), *aff'd as modified,* 148 F.4th 153 (3d Cir. 2025) .......... 5

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021) .......... 11, 12

*Goldstein v. Luxottica of Am., Inc.*,
Case No. 21-80546-CIV, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) .......... 11

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) .......... 6

*Hammer v. Sorensen*,
824 F. App'x 689 (11th Cir. 2020)........................................................................ 18

*Jacome v. Spirit Airlines Inc.*,
No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021)........................ 11

*K.L. v. Legacy Health*,
No. 3:23-CV-1886-SI, 2024 WL 4794657 (D. Or. Nov. 14, 2024).................................... 10

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023)........................................................................ 8

*Lau v. Gen Dig. Inc.*,
No. 22-CV-08981-RFL, 2024 WL 1880161 (N.D. Cal. Apr. 3, 2024), *aff'd sub nom. Karwowski v. Gen Dig., Inc.*, No. 24-7213, 2025 WL 3002610 (9th Cir. Oct. 27, 2025)........................................................................ 14

*Lucas v. Fox News Network, LLC*,
248 F.3d 1180 (11th Cir. 2001)........................................................................ 8

*Marrache v. Bacardi U.S.A., Inc.*,
17 F.4th 1084 (11th Cir. 2021)........................................................................ 17

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)........................................................................ 5

*In re Nickelodeon Consumer Priv. Litig.*,
No. CIV.A. 12-07829, 2014 WL 3012873 (D.N.J. July 2, 2014)........................................ 5

*Nuwer v. FCA US LLC*,
552 F. Supp. 3d 1344 (S.D. Fla. 2021)........................................................................ 16

*Orkin Exterminating Co. v. Petsch*,
872 So. 2d 259 (Fla. 2d DCA 2004)........................................................................ 16

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022)........................................................................ 8

*Pop v. Lulifama.com LLC*,
No. 8:22-CV-2698-VMC-JSS, 2023 WL 4661977 (M.D. Fla. July 20, 2023), *aff'd,* 145 F.4th 1285 (11th Cir. 2025)........................................................................ 15

*Ramos v. Delphi Behav. Health Grp., LLC*,
No. 21-11218, 2022 WL 1415856 (11th Cir. May 4, 2022).................................................. 7

*Rebalko v. City of Coral Springs*,
No. 19-60569-CIV, 2020 WL 6446042 (S.D. Fla. Nov. 3, 2020)........................................ 17

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018)...................... 10

*State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*,
315 F. Supp. 3d 1291 (S.D. Fla. 2018)................................................................... 16

*Swiggum v. EAN Servs., LLC*,
Case No. 8:21-CV-493-TPB-CPT, 2021 WL 3022735 (M.D. Fla. July 16, 2021)................................................................................................. 12

*Vriezen v. Infinite Health Collaborative, P.A.*,
No. 24-CV-3743, 2025 WL 2992204 (D. Minn. Sept. 30, 2025)....................................... 10

*W.W. v. Orlando Health, Inc.*,
No. 6:24-CV-1068-JSS-RMN, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025)................. 17, 18

*Watts v. City of Hollywood*,
Fla., 146 F. Supp. 3d 1254 (S.D. Fla. 2015) ............................................................. 18

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........................................................... 5, 6

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ............................................................................... 5

**Statutes**

18 U.S.C. §§ 2510, *et seq*.............................................................................................. 4

18 U.S.C. § 2511(2)(d) ................................................................................................ 7

Fla. Stat. § 812.012.................................................................................................. 13

Fla. Stat. § 501.203(3)(a), (c)..................................................................................... 15

Fla. Stat. § 772.11.................................................................................................... 13

Fla. Stat. § 817.011.................................................................................................... 7

Fla. Stat. § 934.02.......................................................................................... 10, 11, 12

Fla. Stat. § 934.03(1)(a)............................................................................................ 10

**Court Rules**

Fed. R. Civ. P. 8(a)(2).................................................................................................. 4

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1, 2, 4, 10

**Other Authorities**

45 C.F.R. § 160.103 .......... 9

45 C.F.R. § 162.1101 .......... 9

Defendant Curaleaf, Inc. ("Curaleaf") respectfully moves this Court for the entry of an Order dismissing Plaintiff John Doe's Complaint (Dkt. 1) in its entirety under Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Plaintiff John Doe alleges that he visited Curaleaf's Florida website in June 2025 and purchased medical marijuana. Nothing that occurred during that experience or afterwards harmed Plaintiff in any way. Among other things, he does not claim that Curaleaf experienced a data breach or that information about any medical diagnoses or conditions he has was disclosed or used by Curaleaf or anyone else.

Nevertheless, Plaintiff filed this lawsuit, alleging, on his own behalf and on behalf of putative classes, that everyday technologies on Curaleaf's Florida website constitute "wiretap" devices that disclosed his "protected health information" to third parties in violation of the federal and Florida wiretap statutes, stole his "property," violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and intruded upon his seclusion.

As demonstrated below, the facts alleged by Plaintiff support neither his rhetoric nor his purported claims. Among other things, Plaintiff does not—and cannot—allege that there was any disclosure of his medical diagnosis(es) or condition(s), his name, any other identifying information he provided on the website, or any contents of communications to Google, AdPredictive, or StackAdapt. Instead, at most the website technology challenged by Plaintiff informed those entities that an unnamed website visitor navigated to pages that contain different cannabis products—products that are in no way linked to any specific medical diagnosis or condition. And with respect to Plaintiff's allegations regarding Sweed, the references in the Complaint confirm that Sweed is not a "wiretapper" but rather is the company that provides Curaleaf's online store for Florida customers.

For the reasons set forth below, Plaintiff fails to plausibly allege any of his purported claims against Curaleaf, and the Complaint should be dismissed under Rule 12(b)(6).

## BACKGROUND

### A. Curaleaf

Curaleaf is an international provider of consumer products containing cannabis. Curaleaf makes products available in, among other places, the State of Florida, through retail stores located in the state and through an online store directed to Florida customers located at www.curaleaf.com. The State of Florida restricts the sale of cannabis products to Florida residents who have registered with the state Medical Marijuana Use Registry (the "Florida Registry"), which is maintained by the Florida Department of Health Office of Medical Marijuana Use.

### B. Curaleaf's Florida Online Store

One way that Florida residents on the Florida Registry can shop for and purchase cannabis products from Curaleaf is by using Curaleaf's Florida online store. (Anyone over the age of 21 can browse the online store regardless of whether they are on the Florida Registry.) Curaleaf makes the online store available through a vendor, Sweed. *See* Compl. ¶ 44. Sweed provides customers like Curaleaf with a custom website and "branded online store," which allows Curaleaf to offer its customers "a user-friendly online store designed for easy navigation and secure transactions." *See* https://www.sweedpos.com/ and https://www.sweedpos.com/products/ecommerce (referenced in Compl. ¶ 44). To provide Curaleaf with its Curaleaf-branded Florida online store, "server-side code" routes inbound traffic from a visitor to the Florida online store first to the Curaleaf.com domain and then to Sweed's servers and outbound traffic from Sweed's servers to the Curaleaf.com domain and then to the visitor. *See* Compl. ¶ 48.

The Curaleaf Florida online store—like virtually every retail website—includes software code for website analytics and advertising purposes. In the case of the Curaleaf Florida online

store, the software code is provided by Google Analytics, Google Ads, AdPredictive, and StackAdapt. Compl. ¶¶ 38, 54, and 61. Websites like the Curaleaf Florida online store use analytics and advertising software to track how visitors navigate and use the site, so that they can improve the performance of the website, enhance the user experience, and better calibrate marketing strategies.

The software code in the Curaleaf-branded Florida online store is configured *not* to transmit any information to Google Analytics, Google Ads, AdPredictive, or StackAdapt about a website visitor's medical condition or diagnosis, whether the visitor is on the Florida Registry, or any personally identifiable information (*e.g.*, name, email address, street address, or telephone number) that a visitor has entered on the website. Instead, the software code transmits only URLs (*i.e.*, the webpages within the online store that the visitor viewed, including the pages for specific cannabis products), and whether certain website buttons were clicked (*e.g.*, "begin checkout," "view cart," and "view item"). *See* Compl. ¶¶ 40, 56, and 63. Accordingly, Plaintiff does not—and cannot—allege that the software code transmits to Google, AdPredictive, or StackAdapt any medical condition or diagnosis information, whether a visitor is on the Florida Registry, or any personally identifiable information that a visitor enters in the online store. *See generally id.* Nor does Plaintiff allege that knowing that a visitor viewed—or even purchased—a particular cannabis product communicates their medical diagnosis or condition. The products on the Curaleaf Florida online store are not directed specifically to any particular diagnosis or condition (*i.e.*, knowing that someone viewed a particular cannabis product is entirely different from knowing that someone viewed information about medication used to treat high blood pressure).

### C. Plaintiff's Claims

Based upon his conclusory—and unsupported—allegations that technology in the Curaleaf Florida online store transmits "protected health information" to third parties, Plaintiff alleges that

Curaleaf violated the federal Wiretap Act, the Florida Security of Communications Act, the Florida "civil theft" statute, and the FDUTPA, and committed the tort of "intrusion upon seclusion."

## ARGUMENT

The Court should grant a Rule 12(b)(6) motion when, as here, the complaint fails to state a legal claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Iqbal*, 556 U.S. at 678. Rather, Fed. R. Civ. P. 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief," and the showing must include enough facts to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

As demonstrated below, Plaintiff's Complaint fails to state a claim against Curaleaf upon which relief can be granted and should be dismissed under Fed. R. Civ. P. 12(b)(6).

### I. PLAINTIFF FAILS TO STATE A FEDERAL WIRETAP ACT CLAIM AGAINST CURALEAF.

To state a claim under the federal Wiretap Act, a plaintiff must allege facts showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device. 18 U.S.C. §§ 2510, *et seq.*

Plaintiff fails to plausibly plead these elements and his federal Wiretap Act claim should be dismissed.

### A. Plaintiff Fails to Allege that Curaleaf Intercepted or Procured Another to Intercept the "Contents" of a Communication.

To plead a claim against Curaleaf under the Wiretap Act, Plaintiff must allege that Curaleaf intercepted or procured another person to intercept "the contents of" Plaintiff's communications with the Curaleaf Florida online store. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107–09 (9th Cir. 2014) (dismissing Wiretap Act claim); *Cook v. GameStop, Inc.,* 689 F. Supp. 3d 58, 70–72 (W.D. Pa. 2023), *aff'd as modified,* 148 F.4th 153 (3d Cir. 2025) (same); *In re Nickelodeon Consumer Priv. Litig.,* No. CIV.A. 12-07829, 2014 WL 3012873, at *14–15 (D.N.J. July 2, 2014) (same).

As the Ninth Circuit explained in *Zynga*, "contents" in the context of the Wiretap Act means "a person's intended message to another (*i.e*., the 'essential part' of the communication, the 'meaning conveyed,' and the 'thing one intends to convey')." 750 F.3d at 1106. Applying that meaning of "contents," federal courts have held that URLs that contain only basic identification and website address information—but not information like search terms—do not constitute "contents" under the Wiretap Act. *Zynga*, 750 F.3d at 1107 (holding that URLs did not constitute "contents"); *GameStop, Inc.,* 689 F. Supp. 3d at 70–71 (same); *Nickelodeon*, 2014 WL 3012873, at *15 (same); *cf. In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (intercepted text messages and URLs containing search terms constitute content, but user names and passwords do not, even when transmitted together to allow another to gain access); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) ("[W]hile a URL that includes 'basic identification and address information' is not 'content,' a URL disclosing a 'search term or similar communication made by the user' 'could constitute a communication' under the statute.").

Moreover, federal courts have held that routine identifying information, including the website user's name and shipping and billing address information, do not constitute "contents" of a communication under the Wiretap Act. For example, in *Yoon v. Lululemon USA, Inc.,* 549 F.

Supp. 3d 1073 (C.D. Cal. 2021), the plaintiff filed an action against Lululemon and its website-software developer, asserting violations of, among other things, federal and California wiretapping statutes and the California Invasion of Privacy Act ("CIPA"). The court granted in part and denied in part the defendants' motion to dismiss, holding that the website activity the plaintiff alleged was recorded did not constitute "content" of communications. The court discussed how federal courts have applied the definition of "content," and said that, taken together, the caselaw suggests that CIPA § 631(a)[ii] protects "only the internal, user-generated material of a message, not routine identifiers, whether automatically generated or not." 549 F. Supp. 3d at 1082. The *Lululemon* plaintiff alleged that the defendants recorded her "keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device." *Id.* The court held, however, that none of those pieces of data constitutes message content in the same way that the words of a text message or an email do. *Id.*

Here, Plaintiff alleges that the information transmitted to Google, AdPredictive, and StackAdapt consisted of (a) "full-string URLs"; (b) "information revealing the text of buttons" clicked such as "begin checkout," "view item," and "page view"; and (c) information about items that store visitors browsed, added to their cart, or purchased, *see* Compl. ¶¶ 40, 56, and 63, and information transmitted to Sweed includes those items and "form-field entries," *see id.* ¶ 49.

None of those items of information constitutes the "contents" of a communication between a customer and the Curaleaf Florida online store. *Lululemon,* 549 F. Supp. 3d at 1082–83; *accord Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) (granting motion to dismiss Wiretap Act claim and holding that plaintiff's IP address and unique Lyft driver ID were not the contents of a communication within the meaning of the Wiretap Act).

Plaintiff thus fails to plead that Curaleaf intercepted or procured Google, AdPredictive, StackAdapt, or Sweed to intercept the contents of communications with the Curaleaf Florida online store, and his Wiretap Act claim fails as a matter of law.

### B. Plaintiff's Wiretap Act Claim Also Fails Because Curaleaf Was a Party to the Allegedly Intercepted Communication and the Crime-Tort Exception Does Not Apply.

It is well established that a defendant cannot be liable under the Wiretap Act where it was a party to the allegedly intercepted communication. *See* 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under this chapter for a person not acting under color of law to intercept a[n]...electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception...."); *Ramos v. Delphi Behav. Health Grp., LLC*, No. 21-11218, 2022 WL 1415856, at *1 (11th Cir. May 4, 2022) ("[I]t is lawful for an individual to intercept a communication if he is a party to it.").

Here, Plaintiff alleges that Curaleaf is a party to his allegedly intercepted communications with the Curaleaf Florida online store. *See* Compl. ¶¶ 7, 93–97 (asserting interception of Plaintiff's communications with Curaleaf through Florida online store). Because Curaleaf cannot, as matter of law, be liable under the Wiretap Act for the alleged interception of communications to which Curaleaf was a party, Plaintiff's claim fails as a matter of law.

Plaintiff's Complaint makes clear that he intends to argue that the Wiretap Act nevertheless applies to Curaleaf's alleged conduct through the "crime-tort exception." *See* Compl. ¶ 100 (contending that the website technology on the Curaleaf Florida online store violated the Health Insurance Portability and Accountability Act ("HIPAA") and "state privacy laws" including "Fla. Stat. § 817.011"). Plaintiff, however, fails to sufficiently allege that the crime-tort exception applies.

Plaintiff cannot plausibly allege that Curaleaf had a criminal or tortious purpose separate and independent from the alleged procurement of the interception—a requirement for the crime tort exception to apply. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). As the Ninth Circuit noted, "the focus is not upon whether the interception itself violated [the] law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." *Id.*, 51 F.4th at 1136*; accord Lucas v. Fox News Network, LLC*, 248 F.3d 1180, 1180 n.2 (11th Cir. 2001).

As a result, for the crime-tort exception to apply here, Plaintiff must allege that, at the time his communications allegedly were intercepted, Curaleaf's intended purpose was to commit a separate and independent criminal or tortious act—beyond any alleged liability for the act of intercepting. *Newman*, 51 F.4th at 1136; *see also Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) (plaintiffs failed to allege sufficient facts to suggest that defendant disclosed patients' individually identifiable health information with criminal or tortious purpose).

Plaintiff cannot do so. Contrary to what Plaintiff alleges, Curaleaf is not a "covered entity" under HIPAA, and therefore, even if the website technology in the Curaleaf Florida online store transmitted protected health information to third parties (it did not), Plaintiff cannot plausibly allege that Curaleaf violated HIPAA—much less acted with "the purpose" of violating HIPAA. "Covered entities" under HIPAA include—and only include: (1) a health plan; (2) a health care clearinghouse; and (3) "a health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter." 45 C.F.R. § 160.103.

Plaintiff does not even try to claim that Curaleaf is a health plan or a health care clearinghouse. *See generally* Compl. Instead, Plaintiff asserts that Curaleaf constitutes a "health care provider," apparently on the theory that Curaleaf "transmits . . . health information in

electronic form in connection with a transaction covered by this subchapter." *See* Compl. ¶ 28 (citing 45 C.F.R. § 160.103). The types of transactions "covered by this subchapter," however, are exhaustively defined in 45 C.F.R. § 160.103,[1] and Plaintiff cannot plausibly allege that Curaleaf engages in any of them.

Plaintiff contends that Curaleaf engages in transactions involving "health care claims or equivalent encounter information," *see* Compl. ¶ 28, but fails to identify what Curaleaf activities constitute this type of activity. *See generally id.* The HIPAA regulations define a "health care claims or equivalent encounter information transaction" as "the transmission of either of the following: (a) [a] request to obtain payment, and the necessary accompanying information from a health care provider to a health plan, for health care; [or] (b) [i]f there is no direct claim, because the reimbursement contract is based on a mechanism other than charges or reimbursement rates for specific services, the transaction is the transmission of encounter information for the purpose of reporting health care." 45 C.F.R. § 162.1101. Cannabis products are not covered by health plans and therefore Plaintiff does not and could not allege that Curaleaf is transmitting information to health plans, either to request payment or to report health care in accordance with 45 C.F.R. § 162.1101(a). Curaleaf also does not have any reimbursement contracts and therefore Plaintiff also does not and could not allege that Curaleaf transmits encounter information for the purpose of reporting health care in accordance with 5 C.F.R. § 162.1101(b).

[1] "Transaction" is defined in the regulations as "the transmission of information between two parties to carry out financial or administrative activities related to health care. It includes the following types of information transmissions: (1) Health care claims or equivalent encounter information; (2) Health care payment and remittance advice; (3) Coordination of benefits; (4) Health care claim status; (5) Enrollment and disenrollment in a health plan; (6) Eligibility for a health plan; (7) Health plan premium payments; (8) Referral certification and authorization; (9) First report of injury; (10) Health claims attachments; (11) Health care electronic funds transfers (EFT) and remittance advice; and (12) Other transactions that the Secretary may prescribe by regulation." 45 C.F.R. § 160.103.

As a result, Curaleaf is not a "covered entity" under HIPAA, Plaintiff cannot plausibly allege that Curaleaf violated HIPAA by purportedly engaging in the conduct alleged in the Complaint,[2] and the crime-tort exception does not apply.[3]

For these reasons, Plaintiff fails to plausibly allege that Curaleaf violated the federal Wiretap Act, and that claim should be dismissed under Rule 12(b)(6).

## II. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER THE FLORIDA SECURITY OF COMMUNICATIONS ACT.

Plaintiff also purports to allege a claim under Florida's state wiretap statute, the Florida Security of Communications Act, Fla. Stat. § 934.01, *et seq.* (the "FSCA"). *See* Compl. ¶¶ 103–16. As demonstrated below, Plaintiff fails to plausibly allege that Curaleaf violated the FSCA.

Similar to the federal Wiretap Act, the FSCA imposes liability on a defendant who "intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication." Fla. Stat. § 934.03(1)(a). "Intercept" means the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Fla. Stat. § 934.02(3). The "contents" of a communication "include[] any information concerning the substance, purport, or meaning of that communication." Fla. Stat. § 934.02(7). And "electronic communication" means "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature

---

[2] In addition, even if Curaleaf was a "covered entity" for purposes of HIPAA (it is not), data relating to a visitor browsing the Curaleaf Florida online store would not qualify as protected health care information under HIPAA. *See, e.g., Vriezen v. Infinite Health Collaborative, P.A.*, No. 24-CV-3743 (NEB/DJF), 2025 WL 2992204, at *5 (D. Minn. Sept. 30, 2025) (citing *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018), and *K.L. v. Legacy Health*, No. 3:23-CV-1886-SI, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024)).

[3] Plaintiff asserts in passing that Curaleaf also purportedly violated "state privacy laws," *see* Compl. ¶ 100, but neither identifies those laws nor plausibly alleges that Curaleaf violated them.

transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects intrastate, interstate, or foreign commerce, *but does not include* . . . [a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object." Fla. Stat. § 934.02(12) (emphasis added).

Plaintiff does not sufficiently plead these elements.

In *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021), Judge Carlos Lopez observed that the FSCA is modeled after the federal Wiretap Act and accordingly looked to the Ninth Circuit's interpretation of "contents" (discussed in Section I(A) above) in applying that term to the plaintiff's alleged FSCA claim. 2021 WL 3087860, at *3–4. Judge Lopez noted that the plaintiff alleged that her "mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff" were intercepted by Spirit when she was browsing its website. *Id.* at *4. The court held, however, that "this is precisely the type of non-record information that courts consistently find do not constitute 'contents' under the Federal Wiretap Act or any of its state analogs because it does not convey the *substance* or *meaning* of any message." *Id.* Judge Lopez's reasoning has been endorsed by judges in this District and in the Middle District of Florida. *See, e.g.*, *Cardoso v. Whirlpool Corp,* Case No. 21-CV-60784-WPD, 2021 WL 2820822, at *2 (S.D. Fla. Jul. 6, 2021) (Dimitrouleas, J.) (finding Judge Lopez's reasoning to be "persuasive," adopting it, and granting motion to dismiss); *Connor v. Whirlpool Corp.*, 21-CV-14180-WPD, 2021 WL 3076477, at *2 (S.D. Fla. July 6, 2021) (Dimitrouleas, J.) (same); *Goldstein v. Luxottica of Am., Inc.,* Case No. 21-80546-CIV, 2021 WL 4093295 at *2–3 (S.D. Fla. Aug. 23, 2021) (same), *report and recommendation adopted*, 2021 WL 4125357 (S.D. Fla. Sept. 9, 2021) (Reinhart, M.J.) (same); *Goldstein v. Costco Wholesale Corp*., 559 F. Supp. 3d 1318, 1320 (S.D. Fla. 2021) (Ruiz,

J.) (same); *Swiggum v. EAN Servs., LLC,* Case No. 8:21-CV-493-TPB-CPT, 2021 WL 3022735, at *2 (M.D. Fla. July 16, 2021) (same).

This Court should adopt the same reasoning and hold that Plaintiff fails to plausibly allege the interception of the "contents" of communications with the Curaleaf Florida online store. As noted above, Plaintiff alleges that the information transmitted to Google, AdPredictive, and StackAdapt consisted of (a) "full-string URLs"; (b) "information revealing the text of buttons" clicked such as "begin checkout," "view item," and "page view"; and (c) information about items that store visitors browsed, added to their cart, or purchased, *see* Compl. ¶¶ 40, 56, and 63, and information transmitted to Sweed includes those items and "form-field entries," *see id.* ¶ 49. None of those items of information constitute the meaning of communications between a customer and the Curaleaf Florida online store—and thus are not "contents" for purposes of the FSCA.

Indeed, most of the information allegedly at issue here did nothing more than track Plaintiff's movements in the Curaleaf Florida online store. But "[a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object" is expressly excluded from the reach of the FSCA. *See* Fla. Stat. § 934.02(12) As Judge Ruiz noted in *Goldstein v. Costco*, tracking of the plaintiff's movements:

> [D]id not convey the substance of any communication. Rather, this mere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record information Defendant could have obtained through a security camera at a brick-and-mortar store. The FSCA's text itself reinforces that such actions fall outside the statute's purview. The statute specifically excludes "[a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object." Fla. Stat. § 934.02(12)(c). Although the tracking in this case is virtual rather than physical, the Court finds that the plain language of the statute exempts the sort of tracking that triggered this action. . . . Defendant's recordings of Plaintiff's movements on Defendant's website had no contents because they did not convey the substance of any particular communication by Plaintiff.

559 F. Supp. 3d at 1321.

Plaintiff thus fails to plead that Curaleaf intercepted or procured Google, AdPredictive, StackAdapt, or Sweed to intercept the contents of communications with the Curaleaf Florida online store, and his FSCA claim fails as a matter of law.

## III. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR CIVIL THEFT UNDER FLORIDA LAW.

Plaintiff also claims that Curaleaf violated Florida's "civil theft" statute, Fla. Stat. § 772.11. *See* Compl. ¶¶ 117–28. Plaintiff fails to plausibly allege a violation and his claim should be dismissed.

To assert a claim, Plaintiff must plausibly allege that his "property" was obtained, used, or appropriated. "Property" is defined as "(a) Real property, including things growing on, affixed to, and found in land; (b) Tangible or intangible personal property, including rights, privileges, interests, and claims." Fla. Stat. 812.012. "Although property is defined in the statute as anything of value and includes 'rights, privileges, interests and claims,' the 'owner' must be capable of having 'an interest in the property upon which another person is not privileged to infringe without consent." *Balcor Prop. Mgmt., Inc. v. Ahronovitz*, 634 So. 2d 277, 280 (Fla. Dist. Ct. App. 1994) (citing Fla. Stat. §§ 812.012(3)(a), 812.012(4) (1989)). A civil-theft claim must be dismissed where a plaintiff "has shown neither a legally recognizable interest in the property nor quantifiable injury to himself and has presented no persuasive authority to support his position." *Id.*

Here, Plaintiff makes conclusory assertions that his "protected health information" was used, *see, e.g.*, Compl. ¶¶ 123–24, but as shown above, Plaintiff does not—and cannot—allege that any of his medical diagnosis or condition information was transmitted by the software on the Curaleaf Florida online store to Google, AdPredictive, StackAdapt, or Sweed. Instead, the only information allegedly transmitted to Google, AdPredictive, and StackAdapt was (a) "full-string URLs"; (b) "information revealing the text of buttons" clicked such as "begin checkout," "view

item," and "page view"; and (c) information about items that store visitors browsed, added to their cart, or purchased. *See* Compl. ¶¶ 40, 56, and 63. The Complaint does not identify any authority supporting Plaintiff's overreaching assertion that such records of website behavior somehow qualify as Plaintiff's "property" for purposes of the Florida civil theft statute, and no such authority exists. Similarly, regarding Plaintiff's contention that "form-field" data also was transmitted to Sweed, *see* Compl. ¶ 49, Plaintiff does not identify any authority for the novel proposition that his name, street address, email address, and telephone number are his "property" for purposes of the Florida civil theft statute. *See generally* Compl.

Indeed, courts in other states have rejected application of theft statutes to browsing data on the ground that such data, being incapable of exclusive control, cannot constitute "property." In *Lau v. Gen Dig. Inc.*, No. 22-CV-08981-RFL, 2024 WL 1880161, at *4 (N.D. Cal. Apr. 3, 2024), *aff'd sub nom. Karwowski v. Gen Dig., Inc.*, No. 24-7213, 2025 WL 3002610 (9th Cir. Oct. 27, 2025), a federal court interpreting California's theft statute held that "browsing data is not 'property' capable of theft," because "[u]nder California law, 'property' must be 'capable of exclusive possession or control' . . . [but] [b]y its nature, browsing data is shared with a variety of service providers that facilitate access to the website at issue." *Id.* (citations omitted). While "users have a strong privacy interest in controlling access to the aggregation of that data over time . . . that data is not capable of *exclusive* possession or control." *Id.*

This Court should reach the same conclusion and dismiss Plaintiff's civil theft claim.

## IV. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT.

To state a claim under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 (the "FDUTPA"), a plaintiff must plausibly allege: "(1) a deceptive act or unfair

practice; (2) causation; and (3) actual damages." *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1361 (S.D. Fla. 2018). Plaintiff fails to sufficiently allege these elements.

First, to plead the "deceptive or unfair practice" of the claim, a plaintiff must either: (1) assert a violation of "[a]ny rules promulgated pursuant to the Federal Trade Commission Act" or "[a]ny law, statute, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices," Fla. Stat. § 501.203(3)(a), (c); or (2) allege that "there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *See, e.g., Pop v. Lulifama.com LLC*, No. 8:22-CV-2698-VMC-JSS, 2023 WL 4661977, at *4 (M.D. Fla. July 20, 2023), *aff'd,* 145 F.4th 1285 (11th Cir. 2025) (citation omitted) (dismissing FDUTPA claim for failure to allege any act or practice that could constitute an FDUTPA violation).

Here, Plaintiff cannot plead either form of "deceptive or unfair practice." As explained above, Plaintiff does not—and cannot—allege that software code on the Curaleaf Florida online store transmits to Google, AdPredictive, or StackAdapt any medical condition or diagnosis information, whether a visitor is on the Florida Registry, or any personally identifiable information that a visitor enters in the online store. *See generally* Compl. Nor does Plaintiff allege that Sweed "knowing" that a visitor viewed—or even purchased—a particular cannabis product communicates their medical diagnosis or condition. Thus, contrary to Plaintiff's rhetoric, *see* Compl. ¶ 136, this case is *not* about "disclosing consumers' health information for advertising." And in any event, Curaleaf's Privacy Policy and Cookie Policy—both of which are hyperlinked in the Curaleaf Florida online store (referenced in Compl. ¶¶ 2, 7 and which is a basis for Plaintiff's alleged claims)—disclose to visitors that the website uses analytical and advertising cookies. *See* https://curaleaf.com/privacy-policy; https://curaleaf.com/cookie-policy.

Plaintiff thus fails to plausibly allege that Curaleaf engaged in a "deceptive or unfair practice" under the FDUTPA.

Second, courts applying the FDUTPA have held that a plaintiff must allege actual, *economic* harm. "Under the FDUTPA, actual damages are measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered . . . In other words, a plaintiff must prove the gap in value between what was promised and what was delivered." *State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1310 (S.D. Fla. 2018); *see also Nuwer v. FCA US LLC*, 552 F. Supp. 3d 1344, 1358–59 (S.D. Fla. 2021) ("Diminution of value is the standard for determining actual damages under FDUTPA.").

Here, Plaintiff does not even attempt to plead that Curaleaf caused something of his to diminish in value. *See generally* Compl. Instead, Plaintiff makes only the conclusory allegation that "[b]y integrating the tracking technologies into its website, Defendant received *unjust enrichment* and caused third parties to *intrude upon Plaintiff's and Class members' seclusion*. Defendant's misconduct thus caused Plaintiff and Class members to suffer actual damages." *Id.* ¶ 139 (emphasis added).

That, however, falls far short of alleging the economic damages required to state a FDUTPA claim. Plaintiff instead recites the names of two other supposed causes of action, which (a) would have to be independently shown, and (b) do not represent a quantum of economic damages. Even more crucially, Plaintiff does not even suggest that he suffered any diminution in value in anything. But actual diminution in value "is the full scope of permissible damages under FDUTPA." *A&E Adventures LLC v. Intercard, Inc.*, 529 F. Supp. 3d 1333, 1344 (S.D. Fla. 2021) (citing *Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 263 (Fla. 2d DCA 2004) (explaining

that FDUTPA "permits a consumer to recover only the diminished value of the services received," not "special, consequential, and incidental damages")). Moreover, contrary to what Plaintiff contends, "unjust enrichment" does not provide a measure for legal damages required to support a statutory claim under FDUTPA. Instead, unjust enrichment is a distinct cause of action sounding in equity, not law—and it does not satisfy the economic damages element of a FDUTPA claim. *See Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1101 (11th Cir. 2021).

Plaintiff thus fails to plausibly allege a FDUTPA claim and the Court should grant Curaleaf's motion to dismiss.

## V. PLAINTIFF'S COMPLAINT FAILS TO STATE AN INTRUSION UPON SECLUSION CLAIM AGAINST CURALEAF UNDER FLORIDA LAW.

Finally, Plaintiff fails to plausibly allege a claim for "intrusion upon seclusion." *See* Compl. ¶¶ 141–48. Florida recognizes a tort of "intrusion—physically or electronically intruding into one's private quarters." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003) (citation omitted). "The intrusion to which this refers is into a 'place' in which there is a reasonable expectation of privacy." *Id.* "An intrusion claim has three elements. First, there must be a private quarter. Second, there must be some physical or electronic intrusion into that private quarter. Third, the intrusion must be highly offensive to a reasonable person." *Rebalko v. City of Coral Springs*, No. 19-60569-CIV, 2020 WL 6446042, at *29 (S.D. Fla. Nov. 3, 2020) (citation omitted).

Here, Plaintiff does not even attempt to argue that the Curaleaf Florida online store constitutes a "private place" for purposes of an intrusion upon seclusion claim. *See generally* Compl. It does not.

Indeed, a judge in the Middle District of Florida rejected an intrusion-upon-seclusion claim based on alleged website tracking and disclosures. In *W.W. v. Orlando Health, Inc.*, No. 6:24-CV-1068-JSS-RMN, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025), the plaintiff alleged that pixels and

cookie trackers placed within her MyChart page shared private health information with Meta, Google, and other companies. The court determined, however, that the plaintiff's allegations did not state a claim for intrusion upon seclusion because "her claim [was] based on an intrusion into private activities, rather than a private place, and therefore, her claim is not cognizable under Florida law." *Id.* at *9.

That approach comports with Florida law. As the Eleventh Circuit has noted, "the Supreme Court of Florida has construed the tort of intrusion upon seclusion even more narrowly than the Restatement . . . [and i]t has required a plaintiff to show an intrusion into a private place and not merely a private activity." *Hammer v. Sorensen*, 824 F. App'x 689, 695 (11th Cir. 2020) (citation omitted). Courts applying Florida law have elsewhere held that access to electronic information stored on databases beyond the plaintiff's physical control does not give rise to a claim for intrusion upon seclusion. In *Watts v. City of Hollywood*, Fla., 146 F. Supp. 3d 1254, 1267 (S.D. Fla. 2015), a non-consensual entry to a government database containing the plaintiff's driver's license information did not constitute "an intrusion into a 'place.'" Similarly, in *Bradley v. City of St. Cloud*, No. 6:12-CV-1348-ORL-37, 2013 WL 3270403, at *5 (M.D. Fla. June 26, 2013), a plaintiff who alleged non-consensual access to her medical records stored at the hospital failed to allege "that Defendants intruded into her home or another private place," as required for the tort.

Here, Plaintiff alleges—at most—intrusion upon private activities, not a private place, and thus fails to plausibly allege a claim for intrusion upon seclusion.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Defendant Curaleaf, Inc. respectfully requests that the Court grant its motion and enter an Order dismissing Plaintiff's complaint in its entirety and providing for such other and further relief as is just and appropriate.

Dated: January 9, 2026

Respectfully submitted,

By: */s/ Ross B. Bricker*
One of its attorneys

Ross B. Bricker (Florida Bar No. 801951)
David C. Layden (motion for *pro hac vice* admission pending)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350
rbricker@jenner.com
dlayden@jenner.com

Emma J. O'Connor (motion for *pro hac vice* admission pending)
Krister A. Rasmussen (motion for *pro hac vice* admission pending)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
(202) 639-6000
eoconnor@jenner.com
krasmussen@jenner.com

**CERTIFICATE OF SERVICE**

I certify that on January 9, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

*/s/ Ross B. Bricker*