**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-25202-GAYLES

| | |
|---|---|
| JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, and JANE DOE, individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| | ) |
| *Plaintiffs*, | ) ) |
| vs. | ) ) |
| CURALEAF, INC., | ) ) ) |
| *Defendant*. | ) ) |

**DEFENDANT CURALEAF, INC.'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

    A.  Curaleaf..................................................................................................................2

    B.  Curaleaf's Florida Online Store ...........................................................................3

    C.  Plaintiffs' Claims .................................................................................................4

ARGUMENT .........................................................................................................................4

  I.  PLAINTIFFS FAIL TO STATE A FEDERAL WIRETAP ACT CLAIM
     AGAINST CURALEAF..........................................................................................5

    A.  Plaintiffs Fail to Allege that Curaleaf Intercepted or Procured Another to
        Intercept the "Contents" of a Communication. ..................................................5

    B.  Plaintiffs' Wiretap Act Claims Also Fail Because Curaleaf Was a Party to the
        Allegedly Intercepted Communication and the Crime-Tort Exception Does
        Not Apply.............................................................................................................8

  II.  PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE A CLAIM
      UNDER THE FLORIDA SECURITY OF COMMUNICATIONS ACT.........................11

  III. PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
      CIVIL THEFT UNDER FLORIDA LAW. ..............................................................14

  IV. PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE A CLAIM
      UNDER THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES
      ACT.....................................................................................................................16

  V.  PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE AN INTRUSION
      UPON SECLUSION CLAIM AGAINST CURALEAF UNDER FLORIDA
      LAW. ...................................................................................................................18

CONCLUSION.....................................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&E Adventures LLC v. Intercard, Inc.*,
    529 F. Supp. 3d 1333 (S.D. Fla. 2021) ...................................................................18

*Allstate Ins. Co. v. Ginsberg*,
    863 So. 2d 156 (Fla. 2003)...................................................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................4, 5

*Balcor Prop. Mgmt., Inc. v. Ahronovitz*,
    634 So. 2d 277 (Fla. Dist. Ct. App. 1994) ......................................................14, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................4, 5

*Bradley v. City of St. Cloud*,
    No. 6:12-CV-1348-ORL-37, 2013 WL 3270403 (M.D. Fla. June 26, 2013) ..........19

*Cardoso v. Whirlpool Corp*,
    No. 21-CV-60784-WPD, 2021 WL 2820822 (S.D. Fla. Jul. 6, 2021) ...................13

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................................................................6

*Coleman v. CubeSmart*,
    328 F. Supp. 3d 1349 (S.D. Fla. 2018) .................................................................16

*Connor v. Whirlpool Corp.*,
    21-CV-14180-WPD, 2021 WL 3076477 (S.D. Fla. July 6, 2021) .........................13

*Cook v. GameStop, Inc.*,
    689 F. Supp. 3d 58 (W.D. Pa. 2023), *aff'd as modified,* 148 F.4th 153 (3d Cir.
    2025) ...............................................................................................................5, 6, 7

*Goldstein v. Costco Wholesale Corp.*,
    559 F. Supp. 3d 1318 (S.D. Fla. 2021) ............................................................13, 14

*Goldstein v. Luxottica of Am., Inc.*,
    No. 21-80546-CIV, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) .......................13

*Gonzales v. Uber Techs., Inc.*,
    305 F. Supp. 3d 1078 (N.D. Cal. 2018) ..................................................................7

*Hammer v. Sorensen*,
   824 F. App'x 689 (11th Cir. 2020) ........................................................................19

*Jacome v. Spirit Airlines Inc.*,
   No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ..........................12

*K.L. v. Legacy Health*,
   No. 3:23-CV-1886-SI, 2024 WL 4794657 (D. Or. Nov. 14, 2024).......................................11

*Kurowski v. Rush Sys. for Health*,
   683 F. Supp. 3d 836 (N.D. Ill. 2023) .......................................................................9

*Lau v. Gen Dig. Inc.*,
   No. 22-CV-08981-RFL, 2024 WL 1880161 (N.D. Cal. Apr. 3, 2024), *aff'd*
   *sub nom. Karwowski v. Gen Dig., Inc.*, No. 24-7213, 2025 WL 3002610 (9th
   Cir. Oct. 27, 2025) .....................................................................................15, 16

*Lucas v. Fox News Network, LLC*,
   248 F.3d 1180 (11th Cir. 2001) ............................................................................9

*Marrache v. Bacardi U.S.A., Inc.*,
   17 F.4th 1084 (11th Cir. 2021) ...........................................................................18

*In re Meta Pixel Healthcare Litig.*,
   647 F. Supp. 3d 778 (N.D. Cal. 2022) .....................................................................6

*In re Nickelodeon Consumer Priv. Litig.*,
   No. CIV.A. 12-07829, 2014 WL 3012873 (D.N.J. July 2, 2014)....................................5, 6, 7

*Nuwer v. FCA US LLC*,
   552 F. Supp. 3d 1344 (S.D. Fla. 2021) ...................................................................17

*Orkin Exterminating Co. v. Petsch*,
   872 So. 2d 259 (Fla. 2d DCA 2004) ......................................................................18

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
   51 F.4th 1125 (9th Cir. 2022) ...........................................................................8, 9

*Pop v. Lulifama.com LLC*,
   No. 8:22-CV-2698-VMC-JSS, 2023 WL 4661977 (M.D. Fla. July 20, 2023),
   *aff'd,* 145 F.4th 1285 (11th Cir. 2025)..................................................................16

*Ramos v. Delphi Behav. Health Grp., LLC*,
   No. 21-11218, 2022 WL 1415856 (11th Cir. May 4, 2022)..................................................8

*Rebalko v. City of Coral Springs*,
   552 F. Supp. 3d 1285 (S.D. Fla. 2020) ...................................................................19

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ......................11

*State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery,*
    *LLC*,
    315 F. Supp. 3d 1291 (S.D. Fla. 2018) .................................................................17

*Swiggum v. EAN Servs., LLC*,
    No. 8:21-CV-493-TPB-CPT, 2021 WL 3022735 (M.D. Fla. July 16, 2021) ..........................13

*Vriezen v. Infinite Health Collaborative, P.A.*,
    No. 24-CV-3743, 2025 WL 2992204 (D. Minn. Sept. 30, 2025) ............................................11

*W.W. v. Orlando Health, Inc.*,
    No. 6:24-CV-1068-JSS-RMN, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025) ..........................19

*Watts v. City of Hollywood*, Fla.,
    146 F. Supp. 3d 1254 (S.D. Fla. 2015) .................................................................19

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) ...........................................................6, 7

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ......................................................................5, 6, 7

**Statutes**

18 U.S.C. §§ 2510, *et seq.*.......................................................................................5

18 U.S.C. § 2511(2)(d) .............................................................................................8

Fla. Stat. § 812.012 ...........................................................................................14, 15

Fla. Stat. § 501.203(3)(a), (c)...............................................................................16

Fla. Stat. § 772.11 ...................................................................................................14

Fla. Stat. § 817.011 ...................................................................................................8

Fla. Stat. § 934.02 .............................................................................................12, 14

Fla. Stat. § 934.03(1)(a) ..........................................................................................12

**Court Rules**

Fed. R. Civ. P. 8(a)(2) ..............................................................................................5

Fed. R. Civ. P. 12(b)(6).................................................................................. *passim*

**Other Authorities**

45 C.F.R. § 160.103 ................................................................................................................9, 10

45 C.F.R. § 162.1601 ................................................................................................................10

Defendant Curaleaf, Inc. ("Curaleaf") respectfully moves this Court for the entry of an Order dismissing Plaintiffs' First Amended Complaint (Dkt. 23) in its entirety and with prejudice under Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

In his initial Complaint, Plaintiff John Doe alleged that he visited Curaleaf's Florida website in June 2025 and purchased medical marijuana. Nothing that occurred during that experience or afterwards harmed Plaintiff Doe in any way. Among other things, he did not claim that Curaleaf experienced a data breach or that information about any medical diagnoses or conditions he has was disclosed or used by Curaleaf or anyone else.

Nevertheless, Plaintiff Doe filed this lawsuit, alleging, on his own behalf and on behalf of putative classes, that everyday technologies on Curaleaf's Florida website constitute "wiretap" devices that disclosed his "protected health information" to third parties in violation of the federal and Florida wiretap statutes, stole his "property," violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and intruded upon his seclusion.

Curaleaf moved to dismiss under Fed. R. Civ. P. 12(b)(6), demonstrating that Plaintiff Doe failed to plausibly allege any of his claims.

Rather than respond to Curaleaf's motion to dismiss, Plaintiff Doe filed a First Amended Complaint, adding three new plaintiffs (John Doe #2, John Doe #3, and Jane Doe). The new Plaintiffs each allege they purchased medical marijuana using Curaleaf's Florida website, but like Plaintiff Doe, they do not contend that information about any medical diagnoses or conditions they have was disclosed or used by Curaleaf or anyone else. All Plaintiffs assert the same purported claims that appeared in the original Complaint. The First Amended Complaint also includes modest revisions to the allegations about Curaleaf and about the software code on the Curaleaf Florida website.

1

As demonstrated below, the First Amended Complaint fails for the same reasons that Plaintiff Doe's initial pleading did. Among other things, Plaintiffs do not—and cannot—allege that there was any disclosure of their medical diagnosis(es) or condition(s), names, email addresses, street addresses, or telephone numbers, *or* disclosure of any contents of communications, to Google, AdPredictive, or StackAdapt. Instead, at most, the website technology challenged by Plaintiffs allegedly informed those entities that an unnamed website visitor navigated to pages that contain different cannabis products—products that are in no way linked to any specific medical diagnosis or condition. And with respect to Plaintiffs' allegations regarding Sweed, the references in the First Amended Complaint confirm that Sweed is not a "wiretapper" but rather is the company that provides the software and technology that is Curaleaf's Florida online store. Plaintiffs try to paint Sweed as a nefarious digital dragnet, but in fact Sweed is an e-commerce platform provider—a commonplace actor in today's online retail world.

For the reasons set forth below, Plaintiffs fail to plausibly allege any of their purported claims against Curaleaf, and the First Amended Complaint should be dismissed with prejudice under Rule 12(b)(6).

## **BACKGROUND**

### A.      **Curaleaf**

Curaleaf is an international provider of consumer products containing cannabis. Curaleaf makes products available in, among other places, the State of Florida, through retail stores located in the state and through an online store directed to Florida customers located at www.curaleaf.com. The State of Florida restricts the sale of cannabis products to Florida residents who have registered with the state Medical Marijuana Use Registry (the "Florida Registry"), which is maintained by the Florida Department of Health Office of Medical Marijuana Use.

### B.    Curaleaf's Florida Online Store

One way that Florida residents on the Florida Registry can shop for and purchase cannabis products from Curaleaf is by using Curaleaf's Florida online store. (Anyone over the age of 21 can browse the online store regardless of whether they are on the Florida Registry.) Curaleaf makes the online store available through a vendor, Sweed. *See* Am. Compl. ¶ 49. Sweed provides customers like Curaleaf with a custom website and "branded online store," which allows Curaleaf to offer its customers "a user-friendly online store designed for easy navigation and secure transactions." *See* https://www.sweedpos.com/ and https://www.sweedpos.com/products/ecommerce (referenced in Am. Compl. ¶¶ 49–50). To provide Curaleaf with its Curaleaf-branded Florida online store, "server-side code" routes inbound traffic from a visitor to the Florida online store first to the www.Curaleaf.com domain and then to Sweed's servers and outbound traffic from Sweed's servers to the www.Curaleaf.com domain and then to the visitor. *See* Am. Compl. ¶ 53.

The Curaleaf Florida online store—like virtually every retail website—includes software code for website analytics and advertising purposes. In the case of the Curaleaf Florida online store, the software code is provided by Google Analytics, Google Ads, AdPredictive, and StackAdapt. Am. Compl. ¶¶ 42, 58, and 66. Websites like the Curaleaf Florida online store use analytics and advertising software to track how visitors navigate and use the site, so that they can improve the performance of the website, enhance the user experience, and better calibrate marketing strategies.

The software code in the Curaleaf Florida online store is configured *not* to transmit any information to Google Analytics, Google Ads, AdPredictive, or StackAdapt about a website visitor's medical condition or diagnosis, whether the visitor is on the Florida Registry, or any personally identifiable information (*e.g.*, name, email address, street address, or telephone number)

3

that a visitor has entered on the website. Instead, the software code transmits only URLs (*i.e.*, the internet addresses of the webpages within the online store that the visitor viewed, including the pages for specific cannabis products), and whether certain website buttons were clicked (*e.g.*, "begin checkout," "view cart," and "view item"). *See* Am. Compl. ¶¶ 45, 62, and 70. Accordingly, Plaintiffs do not—and cannot—allege that the software code transmits to Google, AdPredictive, or StackAdapt any medical condition or diagnosis information, whether a visitor is on the Florida Registry, or any personally identifiable information that Plaintiffs entered in the online store. *See generally id.* Nor do Plaintiffs allege that knowing that a visitor viewed—or even purchased—a particular cannabis product communicates their medical diagnosis or condition. The products on the Curaleaf Florida online store are not directed specifically to any particular diagnosis or condition (*i.e.*, knowing that someone viewed a cannabis product is entirely different from knowing that someone viewed information about medication used to treat high blood pressure).

### C.    Plaintiffs' Claims

Based upon their conclusory—and unsupported—allegations that technology in the Curaleaf Florida online store transmits "protected health information" to third parties, Plaintiffs allege that Curaleaf violated the federal Wiretap Act, the Florida Security of Communications Act, the Florida "civil theft" statute, and the FDUTPA, and committed the tort of "intrusion upon seclusion."

## ARGUMENT

The Court should grant a Rule 12(b)(6) motion when, as here, the complaint fails to state a legal claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The

Court need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Iqbal*, 556 U.S. at 678. Rather, Fed. R. Civ. P. 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief," and the showing must include enough facts to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

As demonstrated below, Plaintiffs' First Amended Complaint fails to state a claim against Curaleaf upon which relief can be granted and should be dismissed under Fed. R. Civ. P. 12(b)(6).

## I.   PLAINTIFFS FAIL TO STATE A FEDERAL WIRETAP ACT CLAIM AGAINST CURALEAF.

To state a claim under the federal Wiretap Act, a plaintiff must allege facts showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device. 18 U.S.C. §§ 2510, *et seq.*

Plaintiffs fail to plausibly plead these elements and their federal Wiretap Act claims should be dismissed.

### A.   Plaintiffs Fail to Allege that Curaleaf Intercepted or Procured Another to Intercept the "Contents" of a Communication.

To plead a claim against Curaleaf under the Wiretap Act, Plaintiffs must allege that Curaleaf intercepted or procured another person to intercept "the contents of" Plaintiffs' communications with the Curaleaf Florida online store. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107–09 (9th Cir. 2014) (dismissing Wiretap Act claim); *Cook v. GameStop, Inc.,* 689 F. Supp. 3d 58, 70–72 (W.D. Pa. 2023), *aff'd as modified,* 148 F.4th 153 (3d Cir. 2025) (same); *In re*

*Nickelodeon Consumer Priv. Litig.,* No. CIV.A. 12-07829, 2014 WL 3012873, at *14–15 (D.N.J. July 2, 2014) (same).

As the Ninth Circuit explained in *Zynga,* "contents" in the context of the Wiretap Act means "a person's intended message to another (*i.e.*, the 'essential part' of the communication, the 'meaning conveyed,' and the 'thing one intends to convey')." 750 F.3d at 1106. Applying that meaning of "contents," federal courts have held that URLs that contain only basic identification and website address information—but not information like search terms—do not constitute "contents" under the Wiretap Act. *Zynga,* 750 F.3d at 1107 (holding that URLs did not constitute "contents"); *GameStop, Inc.,* 689 F. Supp. 3d at 70–71 (same); *Nickelodeon,* 2014 WL 3012873, at *15 (same); *cf. In re Carrier IQ, Inc.,* 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (intercepted text messages and URLs containing search terms constitute content, but user names and passwords do not, even when transmitted together to allow another to gain access); *In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) ("[W]hile a URL that includes 'basic identification and address information' is not 'content,' a URL disclosing a 'search term or similar communication made by the user' 'could constitute a communication' under the statute.").

Moreover, federal courts have held that routine identifying information, including the website user's name and shipping and billing address information, do not constitute "contents" of a communication under the Wiretap Act. For example, in *Yoon v. Lululemon USA, Inc.,* 549 F. Supp. 3d 1073 (C.D. Cal. 2021), the plaintiff filed an action against Lululemon and its website-software developer, asserting violations of, among other things, the federal Wiretap Act and the California Invasion of Privacy Act ("CIPA"). The court granted in part and denied in part the defendants' motion to dismiss, holding that the website activity the plaintiff alleged was recorded did not constitute "content" of communications. The court discussed how federal courts have

applied the definition of "content," and said that, taken together, the caselaw suggests that CIPA § 631(a)[ii] protects "only the internal, user-generated material of a message, not routine identifiers, whether automatically generated or not." 549 F. Supp. 3d at 1082. The *Lululemon* plaintiff alleged that the defendants recorded her "keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device." *Id.* The court held, however, that none of those pieces of data constitute message content in the same way that the words of a text message or an email do. *Id.*

Here, Plaintiffs allege that the information transmitted to Google, AdPredictive, and StackAdapt consisted of (a) "full-string URLs"; (b) "information revealing the text of buttons" clicked such as "begin checkout," "view item," and "page view"; and (c) information about items that store visitors browsed, added to their cart, or purchased, *see* Am. Compl. ¶¶ 45, 62, and 70, and information transmitted to Sweed includes those items and "form-field entries," *see id.* ¶ 54.

None of those items of information constitutes the "contents" of a communication between a customer and the Curaleaf Florida online store. *Zynga,* 750 F.3d at 1107; *GameStop, Inc.,* 689 F. Supp. 3d at 70–71; *Nickelodeon,* 2014 WL 3012873, at *15; *Lululemon,* 549 F. Supp. 3d at 1082–83; *accord Gonzales v. Uber Techs., Inc*., 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) (granting motion to dismiss Wiretap Act claim and holding that plaintiff's IP address and unique Lyft driver ID were not the contents of a communication within the meaning of the Wiretap Act).

Plaintiffs thus fail to plead that Curaleaf intercepted or procured Google, AdPredictive, StackAdapt, or Sweed to intercept the contents of communications with the Curaleaf Florida online store, and their Wiretap Act claims fail as a matter of law.

**B.    Plaintiffs' Wiretap Act Claims Also Fail Because Curaleaf Was a Party to the Allegedly Intercepted Communication and the Crime-Tort Exception Does Not Apply.**

It is well established that a defendant cannot be liable under the Wiretap Act where it was a party to the allegedly intercepted communication. *See* 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under this chapter for a person not acting under color of law to intercept a[n]...electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception...."); *Ramos v. Delphi Behav. Health Grp., LLC*, No. 21-11218, 2022 WL 1415856, at *1 (11th Cir. May 4, 2022) ("[I]t is lawful for an individual to intercept a communication if he is a party to it.").

Here, Plaintiffs allege that Curaleaf is a party to their allegedly intercepted communications with the Curaleaf Florida online store. *See* Am. Compl. ¶¶ 7–10, 100–109 (asserting interception of Plaintiffs' communications with Curaleaf through Florida online store). Because Curaleaf cannot, as a matter of law, be liable under the Wiretap Act for the alleged interception of communications to which Curaleaf was a party, Plaintiffs' claims fail as a matter of law.

Plaintiffs' First Amended Complaint makes clear that they intend to argue that the Wiretap Act nevertheless applies to Curaleaf's alleged conduct through the "crime-tort exception." *See* Am. Compl. ¶ 107 (contending that the website technology on the Curaleaf Florida online store violated the Health Insurance Portability and Accountability Act ("HIPAA") and "state privacy laws" including "Fla. Stat. § 817.011"). Plaintiffs, however, fail to sufficiently allege that the crime-tort exception applies.

Plaintiffs cannot plausibly allege that Curaleaf had a criminal or tortious purpose separate and independent from the alleged procurement of the interception—a requirement for the crime tort exception to apply. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). As the Ninth Circuit noted, "the focus is not upon whether the interception itself

8

violated [the] law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." *Id.*, 51 F.4th at 1136; *accord Lucas v. Fox News Network, LLC*, 248 F.3d 1180, 1180 n.2 (11th Cir. 2001).

As a result, for the crime-tort exception to apply here, Plaintiffs must allege that, at the time their communications allegedly were intercepted, Curaleaf's intended purpose was to commit a separate and independent criminal or tortious act—beyond any alleged liability for the act of intercepting. *Newman*, 51 F.4th at 1136; *see also Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) (plaintiffs failed to allege sufficient facts to suggest that defendant disclosed patients' individually identifiable health information with criminal or tortious purpose).

Plaintiffs cannot do so. Contrary to what Plaintiffs allege, Curaleaf is not a "covered entity" under HIPAA, and therefore, even if Plaintiffs had sufficiently alleged that the website technology in the Curaleaf Florida online store transmitted protected health information to third parties (they do not), Plaintiffs cannot plausibly allege that Curaleaf violated HIPAA—much less acted with "the purpose" of violating HIPAA. "Covered entities" under HIPAA include—and only include: (1) a health plan; (2) a health care clearinghouse; and (3) "a health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter." 45 C.F.R. § 160.103.

Plaintiffs do not even try to claim that Curaleaf is a health plan or a health care clearinghouse. *See generally* Am. Compl. Instead, Plaintiffs assert that Curaleaf constitutes a "health care provider," apparently on the theory that Curaleaf "transmits . . . health information in electronic form in connection with a transaction covered by this subchapter." *See* Am. Compl. ¶ 31 (citing 45 C.F.R. § 160.103). The types of transactions "covered by this subchapter," however, are

exhaustively defined in 45 C.F.R. § 160.103,[1] and Plaintiffs cannot plausibly allege that Curaleaf engages in any of them.

Plaintiff Doe appears to have realized that his original contention that Curaleaf engages in transactions involving "health care claims" was a nonstarter. *See* Complaint, ECF No. 1, at ¶ 28; MTD at 9. Plaintiffs now contend instead that Curaleaf engages in transactions involving "health care payment and remittance information," *see* Am. Compl. ¶ 31. This tweak does nothing to save Plaintiffs' Wiretap Act claim, though, because Plaintiffs still fail to identify what Curaleaf activities supposedly constitute this type of activity. *See generally id.* The HIPAA regulations define a "health care electronic funds transfers (EFT) and remittance advice transaction" as

> the transmission of either of the following for health care:
>
> (a) The transmission of any of the following *from a health plan to a health care provider*:
>> (1) Payment.
>> (2) Information about the transfer of funds.
>> (3) Payment processing information.
>
> (b) The transmission of either of the following *from a health plan to a health care provider*:
>> (1) Explanation of benefits.
>> (2) Remittance advice.

45 C.F.R. § 162.1601 (emphasis added). Plaintiffs' argument here fails for exactly the same reason Plaintiff Doe's did before: cannabis products are not covered by health plans and therefore

---

[1] "Transaction" is defined in the regulations as "the transmission of information between two parties to carry out financial or administrative activities related to health care. It includes the following types of information transmissions: (1) Health care claims or equivalent encounter information; (2) Health care payment and remittance advice; (3) Coordination of benefits; (4) Health care claim status; (5) Enrollment and disenrollment in a health plan; (6) Eligibility for a health plan; (7) Health plan premium payments; (8) Referral certification and authorization; (9) First report of injury; (10) Health claims attachments; (11) Health care electronic funds transfers (EFT) and remittance advice; and (12) Other transactions that the Secretary may prescribe by regulation." 45 C.F.R. § 160.103.

Plaintiffs do not and cannot allege that Curaleaf is transmitting payments or information to health plans. Curaleaf also does not have any reimbursement contracts and therefore Plaintiffs also do not and cannot allege that Curaleaf transmits encounter information for the purpose of receiving payment, explaining benefits, or providing remittance advice. As a result, Curaleaf is not a "covered entity" under HIPAA.[2] Plaintiffs cannot plausibly allege that Curaleaf violated HIPAA by purportedly engaging in the conduct alleged in the Complaint,[3] and the crime-tort exception does not apply.[4]

For these reasons, Plaintiffs fail to plausibly allege that Curaleaf violated the federal Wiretap Act, and their claims should be dismissed under Rule 12(b)(6).

## II.   PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE FLORIDA SECURITY OF COMMUNICATIONS ACT.

Plaintiffs also purport to allege claims under Florida's state wiretap statute, the Florida Security of Communications Act, Fla. Stat. § 934.01, *et seq.* (the "FSCA"). *See* Am. Compl. ¶¶ 110–23. As demonstrated below, Plaintiffs fail to plausibly allege that Curaleaf violated the FSCA.

---

[2] Plaintiffs contend that language in Curaleaf's privacy policy shows that Curaleaf "itself recognizes the need to comply with HIPAA." Am. Compl. ¶ 39. That argument fails. "Covered entity" status under HIPAA is a legal question governed by federal statutes and regulations; a particular state's view of whether an entity is regulated under HIPAA and/or should comply with HIPAA (which then is reflected in the entity's privacy policy) does not trump federal law—which, as shown above, makes clear that Curaleaf is not a covered entity regulated under HIPAA.

[3] In addition, even if Curaleaf were a "covered entity" for purposes of HIPAA (it is not), data relating to a visitor browsing the Curaleaf Florida online store would not qualify as protected health care information under HIPAA. *See, e.g., Vriezen v. Infinite Health Collaborative, P.A.*, No. 24-CV-3743 (NEB/DJF), 2025 WL 2992204, at *5 (D. Minn. Sept. 30, 2025) (citing *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018), and *K.L. v. Legacy Health*, No. 3:23-CV-1886-SI, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024)).

[4] Plaintiffs assert in passing that Curaleaf also purportedly violated "state privacy laws," *see* Am. Compl. ¶ 107, but neither identifies those laws nor plausibly alleges that Curaleaf violated them.

Similar to the federal Wiretap Act, the FSCA imposes liability on a defendant who "intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication." Fla. Stat. § 934.03(1)(a). "Intercept" means the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Fla. Stat. § 934.02(3). The "contents" of a communication "include[] any information concerning the substance, purport, or meaning of that communication." Fla. Stat. § 934.02(7). And "electronic communication" means "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects intrastate, interstate, or foreign commerce, *but does not include* . . . [a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object." Fla. Stat. § 934.02(12) (emphasis added).

Plaintiffs do not sufficiently plead these elements.

In *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021), Judge Carlos Lopez observed that the FSCA is modeled after the federal Wiretap Act and accordingly looked to the Ninth Circuit's interpretation of "contents" (discussed in Section I(A) above) in applying that term to the plaintiff's alleged FSCA claim. 2021 WL 3087860, at *3–4. Judge Lopez noted that the plaintiff alleged that her "mouse clicks and movements, keystrokes, search terms, information inputted by plaintiff, and pages and content viewed by plaintiffs" were intercepted by Spirit when she was browsing its website. *Id.* at *4. The court held, however, that "this is precisely the type of non-record information that courts consistently find do not constitute 'contents' under the Federal Wiretap Act or any of its state analogs because it does not convey the *substance* or *meaning* of any message." *Id.* Judge Lopez's

12

reasoning has been endorsed by judges in this District and in the Middle District of Florida. *See, e.g.*, *Cardoso v. Whirlpool Corp,* No. 21-CV-60784-WPD, 2021 WL 2820822, at *2 (S.D. Fla. Jul. 6, 2021) (Dimitrouleas, J.) (finding Judge Lopez's reasoning to be "persuasive," adopting it, and granting motion to dismiss); *Connor v. Whirlpool Corp.*, No. 21-CV-14180-WPD, 2021 WL 3076477, at *2 (S.D. Fla. July 6, 2021) (Dimitrouleas, J.) (same); *Goldstein v. Luxottica of Am., Inc.,* No. 21-80546-CIV, 2021 WL 4093295 at *2–3 (S.D. Fla. Aug. 23, 2021) (same), *report and recommendation adopted*, 2021 WL 4125357 (S.D. Fla. Sept. 9, 2021) (Reinhart, M.J.) (same); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1320 (S.D. Fla. 2021) (Ruiz, J.) (same); *Swiggum v. EAN Servs., LLC,* No. 8:21-CV-493-TPB-CPT, 2021 WL 3022735, at *2 (M.D. Fla. July 16, 2021) (same).

This Court should adopt the same reasoning and hold that Plaintiffs fail to plausibly allege the interception of the "contents" of communications with the Curaleaf Florida online store. As noted above, Plaintiffs allege that the information transmitted to Google, AdPredictive, and StackAdapt consisted of (a) "full-string URLs"; (b) "information revealing the text of buttons" clicked such as "begin checkout," "view item," and "page view"; and (c) information about items that store visitors browsed, added to their cart, or purchased, *see* Am. Compl. ¶¶ 45, 62, and 70, and information transmitted to Sweed includes those items and "form-field entries," *see id.* ¶ 54. None of those items of information constitute the meaning of communications between a customer and the Curaleaf Florida online store—and thus are not "contents" for purposes of the FSCA.

Indeed, most of the information allegedly at issue here did nothing more than track Plaintiffs' movements in the Curaleaf Florida online store. But "[a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an

object" is expressly excluded from the reach of the FSCA. *See* Fla. Stat. § 934.02(12). As Judge

Ruiz noted in *Goldstein v. Costco*, tracking of the plaintiff's movements:

> [D]id not convey the substance of any communication. Rather, this mere tracking
> of plaintiff's movements on Defendant's website is the cyber analog to record
> information Defendant could have obtained through a security camera at a brick-
> and-mortar store. The FSCA's text itself reinforces that such actions fall outside the
> statute's purview. The statute specifically excludes "[a]ny communication from an
> electronic or mechanical device which permits the tracking of the movement of a
> person or an object." Fla. Stat. § 934.02(12)(c). Although the tracking in this case
> is virtual rather than physical, the Court finds that the plain language of the statute
> exempts the sort of tracking that triggered this action. . . . Defendant's recordings
> of plaintiff's movements on Defendant's website had no contents because they did
> not convey the substance of any particular communication by Plaintiffs.

559 F. Supp. 3d at 1321.

Plaintiffs thus fail to plead that Curaleaf intercepted or procured Google, AdPredictive,

StackAdapt, or Sweed to intercept the contents of communications with the Curaleaf Florida online

store, and their FSCA claims fail as a matter of law.

## III.    PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR CIVIL THEFT UNDER FLORIDA LAW.

Plaintiffs also claim that Curaleaf violated Florida's "civil theft" statute, Fla. Stat. § 772.11.

*See* Am. Compl. ¶¶ 124–35. Plaintiffs fail to plausibly allege a violation and their claims should

be dismissed.

To sufficiently assert a theft claim, Plaintiffs must plausibly allege that their "property"

was obtained, used, or appropriated. "Property" is defined as "(a) Real property, including things

growing on, affixed to, and found in land; (b) Tangible or intangible personal property, including

rights, privileges, interests, and claims." Fla. Stat. § 812.012. "Although property is defined in the

statute as anything of value and includes 'rights, privileges, interests and claims,' the 'owner' must

be capable of having 'an interest in the property upon which another person is not privileged to

infringe without consent." *Balcor Prop. Mgmt., Inc. v. Ahronovitz*, 634 So. 2d 277, 280 (Fla. Dist.

Ct. App. 1994) (citing Fla. Stat. §§ 812.012(3)(a), 812.012(4) (1989)). A theft claim must be dismissed where a plaintiff "has shown neither a legally recognizable interest in the property nor quantifiable injury to himself and has presented no persuasive authority to support his position." *Id.*

Here, Plaintiffs make conclusory assertions that their "protected health information" was used, *see, e.g.*, Am. Compl. ¶¶ 130–31, but as shown above, Plaintiffs do not—and cannot—allege that any of their medical diagnosis or condition information was transmitted by the software on the Curaleaf Florida online store to Google, AdPredictive, StackAdapt, or Sweed. Instead, the only information allegedly transmitted to Google, AdPredictive, and StackAdapt was (a) "full-string URLs"; (b) "information revealing the text of buttons" clicked such as "begin checkout," "view item," and "page view"; and (c) information about items that store visitors browsed, added to their cart, or purchased. *See* Am. Compl. ¶¶ 45, 62, and 70. The First Amended Complaint does not identify any authority supporting Plaintiffs' overreaching assertion that such records of website behavior somehow qualify as Plaintiffs' "property" for purposes of the Florida civil theft statute. Plaintiffs could not do so, because no such authority exists. Similarly, regarding Plaintiffs' contention that "form-field" data also was transmitted to Sweed, *see* Am. Compl. ¶ 54, Plaintiffs do not identify any authority for the proposition that their names, street addresses, email addresses, and telephone numbers are their "property" for purposes of the Florida civil theft statute. *See generally* Am. Compl. Again, no such authority exists.

Indeed, courts in other states have rejected application of theft statutes to browsing data on the ground that such data, being incapable of exclusive control, cannot constitute "property." In *Lau v. Gen Dig. Inc.*, No. 22-CV-08981-RFL, 2024 WL 1880161, at *4 (N.D. Cal. Apr. 3, 2024), *aff'd sub nom. Karwowski v. Gen Dig., Inc.*, No. 24-7213, 2025 WL 3002610 (9th Cir. Oct. 27,

2025), a federal court interpreting California's theft statute held that "browsing data is not 'property' capable of theft," because "[u]nder California law, 'property' must be 'capable of exclusive possession or control' . . . [but] [b]y its nature, browsing data is shared with a variety of service providers that facilitate access to the website at issue." *Id.* (citations omitted). While "users have a strong privacy interest in controlling access to the aggregation of that data over time . . . that data is not capable of *exclusive* possession or control." *Id.*

This Court should reach the same conclusion and dismiss Plaintiffs' civil theft claims.

## IV. PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT.

To state a claim under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 (the "FDUTPA"), a plaintiff must plausibly allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1361 (S.D. Fla. 2018). Plaintiffs fail to sufficiently allege these elements.

First, to plead the "deceptive or unfair practice" of the claim, a plaintiff must either: (1) assert a violation of "[a]ny rules promulgated pursuant to the Federal Trade Commission Act" or "[a]ny law, statute, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices," Fla. Stat. § 501.203(3)(a), (c); or (2) allege that "there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *See, e.g., Pop v. Lulifama.com LLC*, No. 8:22-CV-2698-VMC-JSS, 2023 WL 4661977, at *4 (M.D. Fla. July 20, 2023), *aff'd*, 145 F.4th 1285 (11th Cir. 2025) (citation omitted) (dismissing FDUTPA claim for failure to allege any act or practice that could constitute an FDUTPA violation).

Here, Plaintiffs cannot plead either form of "deceptive or unfair practice." As explained above, Plaintiffs do not—and cannot—allege that software code on the Curaleaf Florida online

16

store transmits to Google, AdPredictive, or StackAdapt any medical condition or diagnosis information, whether a visitor is on the Florida Registry, or any personally identifiable information that a visitor enters in the online store. *See generally* Am. Compl. Nor do Plaintiffs allege that Sweed's "knowing" that a visitor viewed—or even purchased—a particular cannabis product communicates their medical diagnosis or condition. Thus, contrary to Plaintiffs' rhetoric, *see* Am. Compl. ¶ 143, this case is *not* about "disclosing consumers' health information for advertising." And in any event, Curaleaf's Privacy Policy and Cookie Policy—both of which are hyperlinked in the Curaleaf Florida online store (referenced in Am. Compl. ¶¶ 2, 4, 7–10 and which is a basis for Plaintiffs' alleged claims)—disclose to visitors that the website uses analytical and advertising cookies. *See* https://curaleaf.com/privacy-policy; https://curaleaf.com/cookie-policy.

Plaintiffs thus fail to plausibly allege that Curaleaf engaged in a "deceptive or unfair practice" under the FDUTPA.

Second, courts applying the FDUTPA have held that a plaintiff must allege actual, *economic* harm. "Under the FDUTPA, actual damages are measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered . . . In other words, a plaintiff must prove the gap in value between what was promised and what was delivered." *State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1310 (S.D. Fla. 2018); *see also Nuwer v. FCA US LLC*, 552 F. Supp. 3d 1344, 1358–59 (S.D. Fla. 2021) ("Diminution of value is the standard for determining actual damages under FDUTPA.").

Here, Plaintiffs do not even attempt to plead that Curaleaf caused something of theirs to diminish in value. *See generally* Am. Compl. Instead, Plaintiffs make only the conclusory allegation that "[b]y integrating the tracking technologies into its website, Defendant received

17

*unjust enrichment* and caused third parties to *intrude upon Plaintiffs' and Class members' seclusion*. Defendant's misconduct thus caused Plaintiffs and Class members to suffer actual damages." *Id.* ¶ 146 (emphasis added).

That falls far short of alleging the economic damages required to state a FDUTPA claim. Plaintiffs do not contend that they suffered any diminution in value in anything. But actual diminution in value "is the full scope of permissible damages under FDUTPA." *A&E Adventures LLC v. Intercard, Inc.*, 529 F. Supp. 3d 1333, 1344 (S.D. Fla. 2021) (citing *Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 263 (Fla. 2d DCA 2004) (explaining that FDUTPA "permits a consumer to recover only the diminished value of the services received," not "special, consequential, and incidental damages")). Moreover, contrary to what Plaintiffs contend, "unjust enrichment" does not provide a measure for legal damages required to support a statutory claim under FDUTPA. Instead, unjust enrichment is a distinct cause of action sounding in equity, not law—and it does not satisfy the economic damages element of a FDUTPA claim. *See Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1101 (11th Cir. 2021).

Plaintiffs thus fail to plausibly allege a FDUTPA claim and the Court should grant Curaleaf's motion to dismiss.

## V.     PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE AN INTRUSION UPON SECLUSION CLAIM AGAINST CURALEAF UNDER FLORIDA LAW.

Finally, Plaintiffs fail to plausibly allege a claim for "intrusion upon seclusion." *See* Am. Compl. ¶¶ 148–55. Florida recognizes a tort of "intrusion—physically or electronically intruding into one's private quarters." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003) (citation omitted). "The intrusion to which this refers is into a 'place' in which there is a reasonable expectation of privacy." *Id.* "An intrusion claim has three elements. First, there must be a private quarter. Second, there must be some physical or electronic intrusion into that private quarter. Third,

the intrusion must be highly offensive to a reasonable person." *Rebalko v. City of Coral Springs*, 552 F. Supp. 3d 1285, 1332 (S.D. Fla. 2020) (citation omitted).

Here, Plaintiffs assert without justification or supporting authority that the Curaleaf Florida online store constitutes a "private place" for purposes of an intrusion upon seclusion claim. *See generally* Am. Compl. It does not.

Indeed, a judge in the Middle District of Florida rejected an intrusion-upon-seclusion claim based on alleged website tracking and disclosures. In *W.W. v. Orlando Health, Inc.*, No. 6:24-CV-1068-JSS-RMN, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025), the plaintiff alleged that pixels and cookie trackers placed within her MyChart page shared private health information with Meta, Google, and other companies. The court determined, however, that the plaintiff's allegations did not state a claim for intrusion upon seclusion because "her claim [was] based on an intrusion into private activities, rather than a private place, and therefore, her claim is not cognizable under Florida law." *Id.* at *9.

That approach comports with Florida law. As the Eleventh Circuit has noted, "the Supreme Court of Florida has construed the tort of intrusion upon seclusion even more narrowly than the Restatement . . . [and i]t has required a plaintiff to show an intrusion into a private place and not merely a private activity." *Hammer v. Sorensen*, 824 F. App'x 689, 695 (11th Cir. 2020) (citation omitted). Courts applying Florida law have elsewhere held that access to electronic information stored on databases beyond the plaintiff's physical control does not give rise to a claim for intrusion upon seclusion. In *Watts v. City of Hollywood, Fla.*, 146 F. Supp. 3d 1254, 1267 (S.D. Fla. 2015), a non-consensual entry to a government database containing the plaintiff's driver's license information did not constitute "an intrusion into a 'place.'" Similarly, in *Bradley v. City of St. Cloud*, No. 6:12-CV-1348-ORL-37, 2013 WL 3270403, at *5 (M.D. Fla. June 26, 2013), a plaintiff

who alleged non-consensual access to her medical records stored at the hospital failed to allege "that Defendants intruded into her home or another private place," as required for the tort.

Here, Plaintiffs allege—at most—intrusion upon private activities, not a private place, and thus fail to plausibly allege a claim for intrusion upon seclusion.

## <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth above, Defendant Curaleaf, Inc. respectfully requests that the Court grant its motion and enter an Order dismissing Plaintiffs' First Amended Complaint in its entirety and with prejudice, and providing for such other and further relief as is just and appropriate.

Dated: March 2, 2026                                        Respectfully submitted,

By: _/s/  Ross B. Bricker_____
          One of its attorneys

Ross B. Bricker (Florida Bar No. 801951)
David C. Layden (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350
rbricker@jenner.com
dlayden@jenner.com

Emma J. O'Connor (*pro hac vice*)
Krister A. Rasmussen (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
(202) 639-6000
eoconnor@jenner.com
krasmussen@jenner.com

## **CERTIFICATE OF SERVICE**

I certify that on March 2, I electronically filed the foregoing with the Clerk of Court using

the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

*/s/ Ross B. Bricker*