**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-25202-GAYLES

JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, and JANE DOE, individually and on behalf of all others similarly situated,

*Plaintiffs*,

vs.

CURALEAF, INC.,

*Defendant*.

**DEFENDANT CURALEAF, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS


INTRODUCTION ........................................................ 1

ARGUMENT ........................................................ 1

I. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE WIRETAP ACT. ........... 1

A. No "Contents" of Any Communication Were Revealed to Any Third Party. ........................................................ 1

B. Plaintiffs Fail to Establish the Crime-Tort Exception. ........................................ 4

II. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FSCA. ............................ 7

III. PLAINTIFFS FAIL TO STATE A CLAIM FOR CIVIL THEFT. ............................ 8

IV. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FDUTPA........................ 9

V. PLAINTIFFS FAIL TO STATE A CLAIM FOR INTRUSION UPON SECLUSION. ........................................................ 10

CONCLUSION ........................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abril v. Dep't of Corrections*,
884 So. 2d 206, (Fla. 2d DCA 2004) ....................8

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....................7

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................4

*Cobbs v. PetMed Express, Inc.*,
No. 25-80458-CIV, 2026 WL 905375 (S.D. Fla. Jan. 14, 2026)....................2, 3

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023), *aff'd as modified,* 148 F.4th 153 (3d Cir. 2025) ....................2

*Doe v. Wellstar Health System, Inc.*,
799 F. Supp. 3d 1268 (N.D. Ga. 2025) ....................3

*Gasparini v. Pordomingo*,
972 So. 2d 1053 (Fla. Dist. Ct. App. 2008) ....................9

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021) ....................4, 7

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................2

*Hammer v. Sorensen*,
824 F. App'x 689 (11th Cir. 2020) ....................10

*Jacome v. Spirit Airlines Inc.*,
2021 WL 3087860 ....................4, 7

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................4

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
603 F. Supp. 3d 1183, 1221 (S.D. Fla. 2022) ....................8

*In re Nickelodeon Consumer Priv. Litig.*,
No. CIV.A. 12-07829, 2014 WL 3012873 (D.N.J. July 2, 2014)....................2

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003)....................4

*Piescik v. CVS Pharmacy, Inc.*,
576 F. Supp. 3d 1125 (S.D. Fla. 2021)....................10

*Stein v. Edwards-Elmhurst Health*,
No. 23-cv-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) (Op. at 1)....................6

*United States v. Bailey*,
288 F. Supp. 2d 1261 (M.D. Fla. 2003), *aff'd*, 419 F.3d 1208 (11th Cir. 2005)....................9

*W.W. v. Orlando Health, Inc.*,
No. 6:24-cv-1068-JSS-RMN, 2025 WL 722892 (M.D. Fla. March 6, 2025)....................3

*Williams v. Am. Optical Corp.*,
985 So. 2d 23 (Fla. Dist. Ct. App. 2008), *aff'd sub nom. Am. Optical Corp. v. Spiewak*, 73 So. 3d 120 (Fla. 2011)....................9

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)....................4

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)....................2, 4

**Statutes**

Federal Pen Register Act (18 U.S.C. §§ 3121, *et seq*.)....................2

Federal Wiretap Act (18 U.S.C. §§ 2510, *et seq.*)....................3, 7

Fla. Stat. § 381.986(10)(f)....................6

Fla. Stat. § 772.11....................8

Fla. Stat. § 817.568....................6, 7

Fla. Stat. § 817.569(2)(a)....................6

**Other Authorities**

45 C.F.R. §§ 162.1101–162.1802....................5

## INTRODUCTION

Plaintiffs' opposition confirms that their claims rest upon mischaracterizing commonplace website analytics and ecommerce functionality as unlawful "wiretapping." Plaintiffs do not—and cannot—plead that Curaleaf disclosed any medical diagnosis or condition, or any user-entered personally identifying information, to Google, AdPredictive, or StackAdapt. Instead, Plaintiffs allege that those third parties received only URLs, button-click events, and page-view/product-navigation information—precisely the sort of non-content routing and "movement tracking" information courts hold is not the "contents" of a communication under the Wiretap Act or the FSCA. Plaintiffs also concede that Curaleaf was a party to the alleged communications, and they therefore rely entirely on the crime-tort exception. But that exception requires a criminal or tortious purpose—an element Plaintiffs do not plausibly plead. The remaining state-law claims fare no better. Civil theft requires Plaintiffs to plausibly allege that Curaleaf knowingly used or obtained "property" in which Plaintiffs have an exclusive possessory interest—not that it used routine browsing data. FDUTPA requires actual economic damages, not "unjust enrichment" or generalized privacy harms. And Florida intrusion-upon-seclusion requires an intrusion into a private "place," not merely private "activities"—a requirement Plaintiffs cannot satisfy.

For these reasons, and those set forth in Curaleaf's motion, the First Amended Complaint should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiffs Fail to State a Claim Under the Wiretap Act.

#### A. No "Contents" of Any Communication Were Revealed to Any Third Party.

To plead a Wiretap Act claim, Plaintiffs must allege that Curaleaf intercepted "the contents of" Plaintiffs' communications. (Dkt. 28 ("Mot.") at 5.) Plaintiffs' opposition identifies four

categories of purportedly intercepted information: (1) form-field entries; (2) URLs; (3) buttons clicked; and (4) products browsed, added to cart, or purchased. (Dkt. 31 ("Op.") at 3–7.)

But although they try to obscure this in the opposition, Plaintiffs' own allegations show that, as to Google, AdPredictive, and StackAdapt, Plaintiffs do *not* plead transmission of form-field entries (names, emails, addresses, phone numbers) at all; rather, they allege only URLs, page views, and button-click events. (Dkt. 23 ("Am. Compl.") ¶¶ 45, 62, 70.) Moreover, Plaintiffs notably do not allege that Curaleaf transmitted *any* free-text search strings, diagnoses, symptoms, or narrative inputs to those entities. (*See generally id.*) And Plaintiffs do not dispute that Sweed is the ecommerce platform provider operating the store infrastructure. (*See* Am. Compl. ¶¶ 49–56.)

As Plaintiffs concede (Op. at 3), the "differentiation between the 'means of establishing communication' and the 'purport of a communication' looms large in federal surveillance law." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 136 (3d Cir. 2015). "Whereas the Wiretap Act governs the interception of communications 'content,' the separate federal Pen Register Act governs the acquisition of non-content 'dialing, routing, addressing, [or] signaling information.'" *Id.* Browsing online requires entering web addresses and clicking links to move from page to page. None of this routing information allegedly shared with Google, AdPredictive, and StackAdapt constitutes "contents" within the meaning of the Wiretap Act. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106–09 (9th Cir. 2014) (dismissing Wiretap Act claim); *Cook v. GameStop, Inc.,* 689 F. Supp. 3d 58, 70–72 (W.D. Pa. 2023), *aff'd as modified,* 148 F.4th 153 (3d Cir. 2025) (same); *In re Nickelodeon Consumer Priv. Litig.,* No. CIV.A. 12-07829, 2014 WL 3012873, at *14–15 (D.N.J. July 2, 2014) (same).

Plaintiffs rely on *Cobbs v. PetMed Express, Inc.*, No. 25-80458-CIV, 2026 WL 905375 (S.D. Fla. Jan. 14, 2026), claiming that in it, the court refused to dismiss "substantively identical

allegations." (Op. at 1.) But the allegations in *Cobbs* are distinct in ways that demonstrate the fundamental flaw in Plaintiffs' case here. *Cobbs* involved an online veterinary pharmacy where the intercepted URLs revealed the user's search queries and the button clicks allegedly revealed specific prescription medications a user was browsing or purchasing. *See Cobbs*, 2026 WL 905375, at *1. Those medications were linked to *specific* diagnoses. *See id.*, at *7 (referencing URL for Nexgard, a medication that prevents fleas and ticks *and* noting that software is tracking "information related to Plaintiffs' pets' medical conditions").

By contrast, Plaintiffs do not—and cannot—allege that the URLs of the pages they visited in the Curaleaf Florida online store revealed any search queries. (*See generally* Am. Compl.)[1] Moreover, a visitor on the Curaleaf Florida online store browsing cannabis products, or any specific cannabis product, is *not* communicating anything about a specific medical diagnosis. Plaintiffs nowhere allege—because they cannot—that any cannabis product on Curaleaf's online store corresponds to a specific medical condition. (*See generally* Am. Compl.) Thus, the alleged disclosures of URLs identifying cannabis products (*see, e.g.*, *id.* ¶¶ 45, 62, and 70) do not involve "contents" of a communication between Plaintiffs and the Curaleaf Florida online store; instead, those URLs constitute at most routing information that insufficient to plead a Wiretap Act claim.[2]

---

[1] Plaintiffs suggest that the URLs "disclose 'search terms'" (Op. at 5) but notably do not direct the Court to any allegations to that effect in the pleading. (*See generally id.*) There are none.

[2] The other cases Plaintiffs claim involve "substantively identical allegations" also are distinguishable because they *did* involve alleged disclosure of contents of communications. *See W.W. v. Orlando Health, Inc.*, No. 6:24-cv-1068-JSS-RMN, 2025 WL 722892 (M.D. Fla. March 6, 2025) (upholding FSCA claim given allegations defendant's technology permitted unauthorized parties to intercept "the medical conditions and types of doctors searched" by plaintiff and "other medical information related to her") (Op. at 1); *D.S Tallahassee Mem. Healthcare*, No. 4:23cv540-MW/MAF, 2024 WL 2318621, at *1 (N.D. Fla. May 22, 2025) (noting allegations of disclosures of "searches") (Op. at 1); *Doe v. Wellstar Health System, Inc.*, 799 F. Supp. 3d 1268, 1271, 1278 (N.D. Ga. 2025) (denying motion to dismiss given allegations of "transmission of descriptive, specific information," including search terms entered into free text boxes and descriptive URLs showing the information being exchanged) (Op. at 1).

Both the Ninth Circuit and judges in this District have rejected attempts to characterize basic URLs that do not reveal search terms and other website navigation information like button clicks as "contents" of communications for purposes of wiretapping statutes. *Zynga*, 750 F.3d at 1107–09 (affirming dismissal of Wiretap Act claim); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021) (dismissing FSCA claim). And with respect to the form-fill data received by Sweed as the provider of the Curaleaf Florida online store: a name, address, and email address are not the "contents" of a communication. They are the functional equivalent of handing a credit card to a cashier. *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (holding "shipping and billing information" does not constitute the "contents" of a communication); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (finding user names and passwords—information more sensitive than a shipping address—do not constitute "contents"); *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *4 (holding "information inputted by plaintiff" does not constitute "contents" under the FSCA because it does not "convey the substance or meaning of any message").[3] Plaintiffs thus fail to plausibly allege the interception of "contents" of their communications with the Curaleaf Florida online store and their Wiretap Act claims should be dismissed with prejudice.

**B. Plaintiffs Fail to Establish the Crime-Tort Exception.**

Plaintiffs do not dispute that because Curaleaf was a party to the communication, none of the supposed interceptions Plaintiffs describe are actionable unless the "crime-tort exception"

[3] Plaintiffs' reliance on *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (Op. at 4), is misplaced, because there the information inputted into the online form included "personal medical information." The same was true in *In re Pharmatrak, Inc.*, 329 F.3d 9, 15–16, 18 (1st Cir. 2003) (communication explicitly identified plaintiff's medical condition) (Op. at 4). Here, it was nothing more than billing information—no medical condition or diagnosis, and therefore no "contents" of a communication.

applies, that is, "if the interception was 'for the purpose of committing any criminal or tortious act.'" (Op. at 8.) But Plaintiffs' three arguments for why the crime-tort exception applies all fail.

Plaintiffs' primary crime-tort theory is that Curaleaf's business interactions with Plaintiffs were transactions covered by HIPAA, and Curaleaf "intercepted" communications for the purpose of violating HIPAA. (Op. at 9–10.) But as Curaleaf demonstrates in its motion, Curaleaf's cannabis business is not subject to HIPAA.[4]

Plaintiffs argue that Curaleaf is a "covered entity" subject to HIPAA because it supposedly engages in transactions including "health care payment and remittance advice," which, according to Plaintiffs, is different (and broader than) the "health care electronic funds transfers (EFT) and remittance advice transaction" noted in Curaleaf's motion. (*See* Op. at 10.) HIPAA, however, does not treat "health care payment" as an open-ended category encompassing any exchange of money related to health-adjacent products. Instead, it regulates specific standardized electronic transactions adopted in the Transactions Rule, including (among others) health care claims, eligibility inquiries, electronic funds transfer, and health care payment and remittance advice—each of which is tied to a defined ANSI X12 transaction set. *See* 45 C.F.R. §§ 162.1101–162.1802. "Health care payment and remittance advice," in particular, refers to the X12 835 transaction, a standardized communication used by health plans to notify providers of adjudication and reimbursement decisions. *See id.* §§ 162.1601–1602. Thus, even if "health care payment" could be characterized as conceptually broader than electronic funds transfer, HIPAA coverage still turns

[4] Plaintiffs repeat their argument that language in Curaleaf's privacy policy supposedly is an admission that Curaleaf is covered by HIPAA. (Op. at 9.) But as Curaleaf has pointed out, and Plaintiffs ignore, "covered entity" status under HIPAA is governed by federal statutes and regulations; a particular state's view of whether an entity should comply with HIPAA, even if it is not obligated to do so under federal law (which then is reflected in the entity's privacy policy), does not impact the scope of what HIPAA does and does not regulate.

on whether the entity participates in one of the specified standardized transactions. Plaintiffs do not allege that Curaleaf transmits or receives X12 835 remittance advice, submits or processes health care claims, or exchanges reimbursement information with health plans or insurers. Consumer payments for medical cannabis are not transformed into HIPAA transactions simply because money changes hands.[5]

Plaintiffs' second argument—that Curaleaf "intercepted" communications for the purpose of violating Florida state privacy laws (*see* Op. at 8–9, 10–11)—fares no better. Plaintiffs cite Fla. Stat. § 381.986(10)(f)(5) (Op. at 11), but that subsection has nothing to do with privacy. Plaintiffs may intend to refer to Fla. Stat. § 381.986(10)(f)(4), which authorizes fines on medical marijuana treatment centers for "improperly disclosing personal and confidential information of the qualified patient." That, however, does not describe a "crime" or "tort" for which Curaleaf could be prosecuted or sued. In any event, as shown above, the information transmitted to Google, AdPredictive, and StackAdapt did not include any "personal and confidential information" of any "qualified patient," and Plaintiffs cannot plausibly allege that "disclosure" of information to Sweed, which provides Curaleaf's Florida online store, was "improper." Plaintiffs also cite Fla. Stat. § 817.569(2)(a) (Op. at 11), but that subsection also does not say what Plaintiffs say it does. Plaintiffs may intend to refer to Fla. Stat. § 817.568, which prohibits "fraudulently us[ing], or possess[ing] with intent to fraudulently use, personal identification information concerning another person." But Plaintiffs do not allege, nor could they plausibly allege, that Curaleaf *fraudulently* used information about Plaintiffs.

[5] Because Curaleaf is not regulated under HIPAA, Plaintiffs' reliance on *Stein v. Edwards-Elmhurst Health*, No. 23-cv-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) (Op. at 1), where there was no dispute that the defendant was a HIPAA covered entity, is misplaced.

Plaintiffs' final argument is that Curaleaf intercepted communications for the purpose of "associating the content of electronic communications with preexisting consumer profiles." (Op. at 8.) But this is not an independently unlawful purpose. Plaintiffs quote language from *Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) (Op. at 9), but *Brown* does not hold that associating electronic communications with consumer profiles is *per se* unlawful: the court was observing that Google had associated browsing data with user profiles *in violation of California's privacy statute.* For all these reasons, Plaintiffs fail to plausibly allege that the crime-tort exception applies, and the federal Wiretap Act claim should be dismissed with prejudice.

## II. Plaintiffs Fail to State a Claim Under the FSCA.

Plaintiffs attempt to distinguish the precedent in this District rejecting FSCA claims like Plaintiffs' claims here on two grounds: that Curaleaf's website is not a "generic commercial setting," and that some of the precedent concerned session replay software. (Op. at 12–13.) These distinctions make no difference. Presumably Plaintiffs' argument is that the Curaleaf Florida online store is not a "generic commercial setting" because Curaleaf sells medical cannabis. But as demonstrated above, Curaleaf is not regulated under HIPAA, and in any event, Curaleaf did not disclose any information about any medical diagnoses associated with Plaintiffs. The information Plaintiffs allege to have been disclosed is the same kind of information that would be disclosed on any ecommerce site.

And it *undermines*, not supports, Plaintiffs' case that *Jacome, Goldstein,* and *Cardoso* held that "session replay software did not intercept the 'contents' of any communication." (Op. at 13.) That is because session replay software, as Plaintiffs explain, "tracks a website browser's movement to recreate a user's session on a website." (Op. at 13 (quoting *Jacome*, 2021 WL 3087860, at *3).) In other words, session replay software records *more* intrusive information—

"mouse clicks and movements, keystrokes"—than Plaintiffs allege the Curaleaf site does. The reasons why those cases were dismissed apply even more strongly here.

## III. Plaintiffs Fail to State a Claim for Civil Theft.

Plaintiffs also fail to state a claim for civil theft under Fla. Stat. § 772.11. First, Plaintiffs assert that information about their online activity constitutes "property" under the statute because it has "financial value." (Op. at 14–15.) But Plaintiffs cite no caselaw in which courts have accepted allegations that records of online activity (or any similar data) constitute property under the statute. *See id.* Moreover, Plaintiffs' bald assertion that data has economic value does not establish a possessory interest that the statute protects. (Op. at 15.) If it did, *every* website's collection of analytics data would be an act of theft.

Plaintiffs alternatively contend that their website activity constitutes "protected health information" (which it does not) and that Plaintiffs "possessed a cognizable interest in [Curaleaf] upholding" a "duty" to protect that information, such that by purportedly breaching that duty, Curaleaf deprived Plaintiffs of a property interest. (Op. at 15.) But, as an initial matter, Plaintiffs decline to specify exactly from where this "duty" arises—gesturing to a handful of allegations about various statutes and citing inapposite case law that, in turn, addresses specific duties under different statutes and rejects Plaintiffs' theory of "implied" duties. (Op. at 15 (citing *Abril v. Dep't of Corrections*, 884 So. 2d 206 (Fla. 2d DCA 2004) (holding cause of action existed for breach of specific statutory duty of confidentiality for test results under HIV testing laws); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1221 (S.D. Fla. 2022) (rejecting "implied contract" theory where plaintiffs alleged no invitation by defendants indicating that the defendants implicitly assented to secure their personal data).)

Even if Curaleaf had such a duty (it did not), breaching a duty is not the same as stealing. Plaintiffs' theory would bootstrap *any* breach of a contractual or statutory duty into a civil theft claim because it ignores the most basic requirement of a claim for civil theft: some identifiable *thing* must be taken. "To establish a claim for civil theft, a party must prove that a conversion has taken place and that the accused party acted with criminal intent." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. Dist. Ct. App. 2008). And to state a conversion claim, a plaintiff must point to "an identifiable *res* wrongfully taken or wrongfully retained." *United States v. Bailey*, 288 F. Supp. 2d 1261, 1273 (M.D. Fla. 2003), *aff'd*, 419 F.3d 1208 (11th Cir. 2005). Plaintiffs do not even attempt to do so. Indeed, that would collapse tort into property law. *See Williams v. Am. Optical Corp.*, 985 So. 2d 23, 26 (Fla. Dist. Ct. App. 2008), *aff'd sub nom. Am. Optical Corp. v. Spiewak*, 73 So. 3d 120 (Fla. 2011) (interest in duties owed are not *property* interests until *after* they have been breached). The Court should dismiss Plaintiffs' civil-theft claims.

## IV. Plaintiffs Fail to State a Claim Under the FDUTPA

Plaintiffs' FDUTPA claim also fails. Plaintiffs' assertion that Curaleaf engaged in an "unfair practice" by "disclosing consumers' health information for advertising" (Op. at 16), rests on the false premise that health information was in fact disclosed. It was not. (Mot. at 16-17.) The information transmitted by the Curaleaf Florida online store to Google, AdPredictive, and StackAdapt did not include medical diagnoses, conditions, or personally identifiable information. (*Id.*) And Curaleaf's use of analytics and advertising software is disclosed in its Privacy Policy and Cookie Policy, both of which are hyperlinked on the website. (*Id.*) A practice that is both standard in the industry and disclosed to consumers is not "unfair" or "deceptive" within the meaning of the FDUTPA.

Plaintiffs themselves concede that they cannot state a FDUTPA claim for damages. (Op.

at 17 n.2.) They attempt to salvage the claim by seeking injunctive relief alone. (*See id.*) But even assuming that such relief is available under the FDUTPA absent actual damages, injunctive relief is not available without a showing of an ongoing violation or a real and immediate threat of future injury. *See Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1131 (S.D. Fla. 2021) (dismissing FDUTPA claim for injunctive relief where plaintiff failed to allege "any threat of imminent future injury"). Plaintiffs do not allege that they intend to return to the Curaleaf website, nor do they allege any ongoing or imminent harm from their past visits. They therefore lack standing to request injunctive relief under the FDUTPA.

## V. Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion.

Plaintiffs' intrusion-upon-seclusion claim fares no better. The Eleventh Circuit has confirmed that "the Supreme Court of Florida has construed the tort of intrusion upon seclusion even more narrowly than the Restatement . . . [and] has required a plaintiff to show an intrusion into a private place and not merely a private activity." *Hammer v. Sorensen*, 824 F. App'x 689, 695 (11th Cir. 2020). Although Plaintiffs attempt to allege that Curaleaf's website is somehow a private place (Op. at 17), this is not supported by the relevant case law. The court in *W.W. v. Orlando Health, Inc.* rejected an intrusion-upon-seclusion claim based on allegations of intrusion within a hospital network's "MyChart Patient Portal," a far more private digital setting than the Curaleaf Florida online store. 2025 WL 722892, at *9. If a private, password-protected health portal used by hospital patients is not a "private place" under Florida law, then a public-facing ecommerce website that does not communicate medical diagnoses and conditions certainly is not.

## CONCLUSION

For these reasons and those set forth in Curaleaf's motion, the Court should dismiss the amended complaint with prejudice.

Dated: April 27, 2026

*/s/ Ross Bricker*
Ross B. Bricker (Florida Bar No. 801951)
David C. Layden (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350
rbricker@jenner.com
dlayden@jenner.com

Emma J. O'Connor (*pro hac vice*)
Krister A. Rasmussen (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
(202) 639-6000
eoconnor@jenner.com
krasmussen@jenner.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that on April 27, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

*/s/ Ross B. Bricker*